## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED FINANCIAL CASUALTY
COMPANY,                                          Civil Action No.

               Plaintiff,

     v.

MID STATE LOGISTICS LLC; and
CHARLES E. RANKIN,

               Defendants.

### COMPLAINT FOR DECLARATORY JUDGMENT

NOW, comes Plaintiff, United Financial Casualty Company ("UFCC"), by and through its attorneys, BURNS WHITE LLC, and files the following Complaint for Declaratory Judgment, averring as follows:

### THE PARTIES

1.      UFCC is an Ohio Corporation registered to conduct business in the Commonwealth of Pennsylvania, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio, and a citizen of Ohio.

2.      Mid State Logistics LLC ("Mid State") is a limited liability company organized under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 10000 Stage Road, McClure, Pennsylvania, the members of which are citizens of Pennsylvania.

3.      Charles E. Rankin ("Mr. Rankin") is an individual who resides at 1901 Dinahs Corner Road, Dover, Delaware, and a citizen of Delaware.

### JURISDICTION AND VENUE

4.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, in that (i) complete diversity of citizenship exists between the Plaintiff and

Defendants and (ii) the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.        Venue of this action in this Court is proper pursuant to 28 U.S.C. § 1391(b), in that both defendants are either located, reside, or regularly conduct business in this judicial district and this case concerns an insurance contract, which was entered into in this judicial district, and the application of the policy to claims that are presently being litigated in this judicial district.

## NATURE OF THE ACTION & NECESSITY OF DECLARATORY JUDGMENT

6.        This Declaratory Judgment Action is brought by UFCC seeking declaratory relief as to the rights and obligations of UFCC, Mid-State, and Mr. Rankin (Mid-State's alleged employee) under an insurance policy issued by UFCC to Mid State – Policy No. 03881586-1 effective August 9, 2017 to August 9, 2018 ("Policy") – as it relates to a lawsuit that was filed in the Court of Common Pleas of Philadelphia County, Pennsylvania at Docket No. 200401538 ("Lawsuit") relative to injuries that were allegedly sustained by Clay Rosebrooks ("Mr. Rosebrooks") as a result of a motor vehicle accident that took place on May 3, 2018 ("Accident").

7.        An actual controversy has arisen between the parties in that representatives of Mid State have submitted claims under the Policy – UFCC Claim No. 18-2724832 ("Claim") – and UFCC has, with a reasonable basis and while reserving all rights, asserted that the Policy does not provide coverage with respect to the Claim, Accident, or Lawsuit.

8.        Consequently, UFCC seeks a declaration of the parties' rights and obligations under the Policy with respect to the Claim, Accident, and Lawsuit.

**THE LAWSUIT**

9.      On April 29, 2020, Mr. Rosebrooks and his wife, Laura Rosebrooks (collectively "the Rosebrooks"), filed the Lawsuit relative to the Accident against Mid State and Mr. Rankin. (See Ex. 1.)

10.      On August 27, 2020, the Rosebrooks filed an Amended Complaint against Mid State and Mr. Rankin. (See Ex. 2.)

11.      On October 6, 2020, the Rosebrooks filed a Second Amended Complaint against Mid State and Mr. Rankin. (See Ex. 3.)

12.      The Second Amended Complaint filed in the Lawsuit alleges that Mr. Rosebrooks sustained injuries as a result of a motor vehicle accident that took place on May 3, 2018 on Interstate 4 in Longwood, Seminole County, Florida – i.e., the Accident. (See Ex. 3, ¶¶ 8, 10, 11, 13.)

13.      The Second Amended Complaint alleges that at the time of the Accident, Mr. Rankin was operating a 2004 Kenilworth tractor-trailer ("Vehicle"), which was leased to Mid State pursuant to a "Lease Agreement" between Mr. Rosebrooks and Mid State. (See Ex. 3, ¶ 6, Exhibit A.)

14.      The Lease Agreement, dated September 1, 2017 and attached to the Second Amended Complaint, provides, in relevant part, as follows:

> (1)      LESSOR [Mid State] is a motor carrier of property authorized by the Federal Highway Administration by Permit No. MC-472447[1] to provide transportation of property under contract with shippers and receivers of general commodities, and

---

[1] Based on publicly available records, the Motor Carrier Number listed in the Lease Agreement – MC-472447 – is not associated with Mid State, but rather Troyers Transport LLC. Link: Federal Motor Carrier Safety Administration Information - MC-472447.

(2)   LESSEE [Clay Rosebrooks] is the owner of the tractor and trailer equipment described in Appendix "A" and is duly authorized and empowered to execute this agreement.

\*

(4)   The LESSOR [Mid State] has a legal obligation and the responsibility to maintain liability and cargo insurance coverage for the protection of the public as required by Federal Highway Administration regulations under 49 U.S.C. 10927, as amended by Public Law 104-88. All insurance cost of the operation of LESSEE's [Clay Rosebrooks] equipment while in the service of the LESSOR [Mid State] shall be paid by LESSEE [Clay Rosebrooks]. If the cost of the insurance is initially paid by LESSOR [Mid State], such cost will be charged-back in full to the LESSEE [Clay Rosebrooks].

\*

(9)   It is agreed that the services of LESSEE [Clay Rosebrooks] under the terms of this lease agreement is that of an independent contractor and that no "employee-employer" relationship exists between LESSEE [Clay Rosebrooks] and LESSOR [Mid State].   LESSEE [Clay Rosebrooks] is therefore responsible for providing his own workers compensation insurance, employment and income taxes, etc. Further, any drivers or employees of LESSEE [Clay Rosebrooks] are the complete responsibility of the LESSEE [Clay Rosebrooks].  The LESSEE [Clay Rosebrooks] has the right to refuse work at any time.

\*

(10)  This AGREEMENT is to become effective 9/1/17 and shall remain in effect for a period of one year from such date, and from year to year thereafter, subject to the right of either party hereto to cancel or terminate the AGREEMENT at any time with written notice of one party or the other.

\*

(Id.)

15.   The Second Amended Complaint alleges that at all relevant times, Mr. Rankin was an "agent, ostensible agent and/or employee" of Mid State. (See Ex. 3, ¶ 7.)

4

16.     The Second Amended Complaint alleges that at the time of the accident, Mr. Rosebrooks was a passenger in the Vehicle, in the sleeping-cabin, in his capacity as an "off-duty, independent contractor" of Mid State. (See Ex. 3, ¶¶ 10, 12.)

17.     The Second Amended Complaint alleges that the Defendants were subject to the Federal Motor Carrier Safety Regulations ("FMCSR") and were engaged in interstate trucking. (See Ex. 3, ¶¶ 9, 19(f).)

18.     The Second Amended Complaint alleges that the Accident occurred when Mr. Rankin, due to careless inattention, an excessive rate of speed, and his inability to stay awake at the wheel, lost control of the vehicle which left the roadway striking the guardrail before overturning on its right side. (See Ex. 3, ¶ 11.)

19.     The Second Amended Complaint alleges that Mr. Rankin was negligent in operating and maintaining the Vehicle, and in violating the FMCSR. (See Ex. 3, Count I, ¶ 19.)

20.     The Second Amended Complaint alleges that Mid State was vicariously liable for the conduct of Mr. Rankin. (See Ex. 3, Count II, ¶ 21.)

21.     The Second Amended Complaint also asserts a Loss of Consortium claim against Mr. Rankin and Mid State. (See Ex. 3, Count III, ¶ 23.)

## POLICY INFORMATION

22.     UFCC issued Commercial Auto Policy No. 18-2724832 to "MID STATE LOGISTICS LLC" effective August 9, 2017 through August 9, 2018 (again, "Policy"). A copy of the Policy declarations and the forms identified therein is attached hereto at Exhibit 4.

23.     As of the date of the Accident, neither Mr. Rosebrooks nor Mr. Rankin were listed on the Policy as a "rated driver."[2]

---

[2] The name "Clay Borne" appears on the Policy declarations, which may have been an attempt to identify Mr. Rosebrooks, who, upon information and belief, is also known as Clayborne Rosebrooks.

24.     The Vehicle owned by Mr. Rosebrooks was listed on the Policy Declarations.

25.     The Policy is endorsed with Pennsylvania forms.

26.     The Policy consists of the following forms and endorsements:

a.   Commercial Auto Policy Form 6912 (06/10);
b.   Uninsured/Underinsured Motorist Coverage Endorsement Form 2852PA (03/11);
c.   First Party Benefits Coverage Endorsement 1652PA (03/11);
d.   Motor Truck Cargo Legal Liability Coverage Endorsement Z434 (08/11);
e.   Endorsement for Motor Carrier Policies MCS90 (06/14);
f.   Additional Insured Endorsement 1198 (01/04);
g.   Trailer Interchange – Coverage Endorsement 4717 (02/11)
h.   Pennsylvania Amendatory Endorsement 4881PA (03/11);
i.   Cancellation and Nonrenewal Endorsement 4852PA (10/04); and
j.   Mobile Equipment as Insured Autos Endorsement Z228 (01/11).

27.     The Commercial Auto Coverage Form ("Auto Form") in the Policy contains the following Insuring Agreement:

INSURING AGREEMENT - LIABILITY TO OTHERS

Subject to the Limits of Liability, if you pay the premium for liability coverage for the insured auto involved, we will pay damages, other than punitive or exemplary damages, for bodily injury, property damage, and covered pollution cost or expense, for which an insured becomes legally responsible because of an accident arising out of the ownership, maintenance or use of that insured auto. However, we will only pay for the covered pollution cost or expense if the same accident also caused bodily injury or property damage to which this insurance applies.

We will settle or defend, at our option, any claim or lawsuit for damages covered by this Part I. We have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

28.     The Auto Form contains the following Exclusions:

Coverage under this Part I, including our duty to defend, does not apply to:

*

3.  Worker's Compensation

    Any obligation for which an insured or an insurer of that insured, even if one does not exist, may be held liable under workers' compensation, unemployment compensation, disability benefits law, or any similar law.

*

5.  Employee Indemnification and Employer's Liability

    Bodily injury to:

    a.  An employee of any insured arising out of or within the course of:

        (i)  That employee's employment by any insured; or

        (ii) Performing duties related to the conduct of any insured's business; or

    b.  The spouse, child, parent, brother or sister of that employee as a consequence of Paragraph a. above.

    This exclusion applies:

    a.  Whether the insured may be liable as an employer or in any other capacity; and

    b.  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

*

6.  Fellow Employee

    Bodily injury to:

    a.  a fellow employee of an insured injured while within the course of their employment or while performing duties related to the conduct of your business.

7

      b.  the spouse, child, parent, brother, or sister of that fellow employee as a consequence of Paragraph a. above.

*

29.    The Auto Form contains the following definitions:

1.  "Accident" means a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event, that causes bodily injury or property damage.

2.  "Auto" means a land motor vehicle or trailer designed for travel on public roads, or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged. It does not include mobile equipment Self-propelled vehicles with the following types of permanently attached equipment are autos, not mobile equipment:

    a.  equipment designed and used primarily for:

        (i)  snow removal;

        (ii)  road maintenance, but not construction or resurfacing;

        (iii)  street cleaning;

    b.  cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c.  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment.

*

5.  "Insured auto" or "your insured auto" means:

    a.  Any auto specifically described on the declarations page;

*

17. "You", "your" and "yours" refer to the named insured shown on the declarations page.

*

8

30.     The Auto Form also contains the following Definitions applicable to the liability coverage afforded thereunder:

## ADDITIONAL DEFINITIONS USED IN THIS PART ONLY

A.  When used in Part I - Liability  To Others, insured  means:

1.  You with respect to an insured auto.

2.  Any person while using, with your permission, and within the scope of that permission, an insured auto you own, hire, or borrow except:

*

(c) The owner or anyone else from whom the insured auto is leased, hired, or borrowed unless the insured auto is a trailer connected to a power unit that is an insured auto. However, this exception does not apply if the insured auto is specifically described on the declarations page.

For purposes of this subsection A.2., an insured auto you own includes any auto specifically described on the declarations page.

3.  Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I - Liability  To Others.

If we make a filing or submit a certificate of insurance on your behalf with a regulatory or governmental agency, the term "insured" as used in such filing or certificate, and in any related endorsement, refers only to the person or organization named on such filing, certificate or endorsement.

B.  When used in Part I - Liability  To Others, insured auto also includes:

1.  Trailers designed primarily for travel on public roads, while connected to your insured auto that is a power unit;

*

9

31.   The Policy contains the MCS90 Endorsement, which provides insurance coverage consistent with the FMCSR.

32.   The MCS90 Endorsement contains the following definitions:

ACCIDENT includes continuous or repeated exposure to conditions which result in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

MOTOR VEHICLE means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

BODILY INJURY means injury to the body, sickness, or disease to any person, including death resulting from any of these.

\*

PUBLIC LIABILITY means liability for bodily injury, property damage, and environmental restoration.

33.   The MCS90 endorsement contains exclusionary language rendering it inapplicable to injuries sustained by employees in the course and scope of their employment:

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course

of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

*

## CLAIM HANDLING

34.     Following notice of the Claim, on September 13, 2018, UFCC issued a Reservation of Rights letter to Mid State ("Initial Mid State Reservation of Rights"), a copy of which is attached hereto at Exhibit 5.

35.     In the Initial Mid State Reservation of Rights, UFCC advised Mid State that coverage issues existed with respect to the Claim that potentially limited or precluded the coverage that was available to Mid State, Mr. Rosebrooks, and/or Mr. Rankin with respect to the Accident and Claim.

36.     The Initial Mid State Reservation of Rights advised Mid State that issues existed relating to the insured status of Mr. Rosebrooks and Mr. Rankin, as the "Employee Indemnification and Employer's Liability" Exclusion and the "Fellow Employee" Exclusion potentially applied.

37.     The Initial Mid State Reservation of Rights further advised that it appeared that, because Mid State may have been obligated to provide applicable workers' compensation coverage, the "Worker's Compensation" Exclusion potentially applied.

38.     The Initial Mid State Reservation of Rights requested additional information regarding Mid State's operations and the involvement of Mr. Rosebrooks and Mr. Rankin with respect to the same.

39.     On October 25, 2019, UFCC issued a Supplemental Reservation of Rights to Mid State ("Supplemental Mid State Reservation of Rights"), raising the same coverage issues previously addressed, and reiterating the requests for additional information.   A copy of the Supplemental Mid State Reservation of Rights is attached hereto at Exhibit 6.

40.     Following notice to UFCC that the Lawsuit had been filed, on May 27, 2020, UFCC issued a Second Supplemental Reservation of Rights Letter to Mid State ("Second Supplemental Mid State Reservation of Rights").   A copy of the Second Supplemental Mid State Reservation of Rights is attached hereto at Exhibit 7.

41.     The Second Supplemental Mid State Reservation of Rights reiterated and reaffirmed that it appeared that coverage was not afforded under the Policy relative to the Accident and the Claim, because (i) Mr. Rosebrooks and Mr. Rankin qualify as employees of Mid State under the Federal Motor Carrier Safety Act, the FMCSR, and the Policy, such that the "Employee Indemnification and Employer's Liability" and "Fellow Employee" Exclusions apply, and (ii) a workers' compensation obligation could have existed with respect to Mr. Rosebrook's injuries, such that the "Worker's Compensation" Exclusion applies.

42.     Pursuant to its Reservation of Rights, UFCC undertook the defense of Mid State and Mr. Rankin.   (See Ex. 7; Ex. 8.)

## COVERAGE ISSUES

43.     For the following reasons, liability coverage is not available to Mid State or Mr. Rankin relative to the Claim and Accident.

44.     The Policy was written and endorsed with the MCS90 in order to provide coverage to Mid State as a motor carrier consistent with its obligations under the FMCSR.

45.     Pursuant to the FMCSR, Mr. Rosebrooks and Mr. Rankin qualify as "statutory employees" of Mid State while tandem driving for Mid State, irrespective of whether one may have been in the sleeper berth of the Vehicle, and, therefore, "employees" of Mid State for purposes of the coverage afforded under the Policy.

46.     Where the Policy was written to provide coverage consistent with the FMCSR, the term "employee" in the Policy conforms with the scope of individuals qualifying as such under the FMCSR.

47.     Where Mr. Rosebrooks and Mr. Rankin qualified as "employees" at the time of the Accident under the FMCSR and the Policy, the "Employee Indemnification and Employer's Liability" and "Fellow Employee" Exclusions apply, and coverage is expressly excluded under the MCS90 Endorsement.

48.     Further, Mr. Rosebrooks alleges, by incorporation of the Lease Agreement, that he was contractually obligated to ensure that workers' compensation coverage was available with respect to his operations.

49.     Where a workers' compensation obligation could have existed with respect to the injuries sustained by Mr. Rosebrooks, the "Worker's Compensation" Exclusion applies.

50.     Therefore, UFCC seeks a declaration that the Policy does not provide coverage to Mid State or Mr. Rankin relative to the Accident, Claim, or Lawsuit, such that UFCC has no duty to defend or indemnify Mid State or Mr. Rankin in the Lawsuit.

WHEREFORE, United Financial Casualty Company respectfully requests that this Court enter an Order declaring that the Policy does not provide coverage to Mid State Logistics LLC or

Charles E. Rankin relative to the Accident, Claim, or Lawsuit, and that United Financial Casualty Company has no duty to defend or indemnity Mid State or Mr. Rankin with respect to the Lawsuit.

Respectfully submitted,

BURNS WHITE LLC

By: /s/ Taylor M. Davis
Matthew A. Meyers (PA I.D. 202838)
E-mail: mameyers@burnswhite.com
Taylor M. Davis (PA I.D. 327312)
E-mail: tmdavis@burnswhite.com
Burns White Center
48 26th Street
Pittsburgh, PA 15222
(412) 995-3281 – Direct
(412) 995-3000 – Fax

*Attorneys for Plaintiff,*
*United Financial Casualty Company*