IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED FINANCIAL CASUALTY COMPANY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MID STATE LOGISTICS and CHARLES E. RANKIN,<br><br>　　　　Defendants. | No. 4:21-CV-00177<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**JUNE 10, 2022**

　　This insurance coverage dispute emerges from a May 2018 semi-trailer accident. At the time, Charles Rankin and Clay Rosebrooks were team-driving on Interstate 4 in Longwood, Florida—Rankin at the wheel, Rosebrooks in the sleeper—when they careened into the guardrail and overturned. To recover damages for his resulting injuries, Rosebrooks and his wife sued Rankin and the trucking company, the McClure, Pennsylvania-based Mid State Logistics, in the Court of Common Pleas of Snyder County, Pennsylvania. Just over a year later, Mid State Logistics' commercial auto insurer, United Financial Casualty Company, sought a declaration from this Court on its duty to defend Mid State Logistics and Rankin in the state court suit.

Under its insurance agreement with Mid State Logistics, United Financial Casualty does not have to defend and indemnify Mid State Logistics against claims brought by an "employee." The parties agree that, though undefined in the agreement, this term is governed by 49 C.F.R. § 390.5, which provides that an employee is anyone "who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle," before then clarifying that "[s]uch term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle) . . . ."

So when Rosebrooks, an independent contractor, swapped spots with Rankin did he cease to be an employee? This Court finds that he did not.

## I.   LEGAL STANDARD

This question comes before the Court through United Financial Casualty's motion for summary judgment on its complaint seeking declaratory judgment regarding the scope of it and Mid State Logistics' insurance agreement.[1] Each legal standard is addressed in turn.

### A.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the

---

[1]   *See* Doc. 1 (Complaint for Declaratory Judgment); Doc. 6 (Motion for Summary Judgment).

movant is entitled to judgment as a matter of law."² Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."³ A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."⁴ Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."⁵

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.⁶ When the movant properly supports its motion, the nonmoving party must then show the need for a trial by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."⁷ The nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."⁸ Instead, it must "identify those facts of record which would contradict the facts identified by the movant."⁹

---

2   Fed. R. Civ. P. 56(a).
3   *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
4   *Clark*, 9 F.3d at 326.
5   *Id*.
6   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
7   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).
8   *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).
9   *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (quoting *Childers v. Joseph*, 842 F.2d 689, 694–95 (3d Cir. 1988)).

movant is entitled to judgment as a matter of law."² Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."³ A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."⁴ Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."⁵

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.⁶ When the movant properly supports its motion, the nonmoving party must then show the need for a trial by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."⁷ The nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."⁸ Instead, it must "identify those facts of record which would contradict the facts identified by the movant."⁹

---

2   Fed. R. Civ. P. 56(a).
3   *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
4   *Clark*, 9 F.3d at 326.
5   *Id*.
6   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
7   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).
8   *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).
9   *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (quoting *Childers v. Joseph*, 842 F.2d 689, 694–95 (3d Cir. 1988)).

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[10] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[11] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[12] Finally, although this Court "need consider only the cited materials, . . . it may consider other materials in the record."[13]

### B. Declaratory Judgment and the Court's Role in Interpreting Insurance Agreements

The Declaratory Judgment Act provides that "[i]n case of actual controversy within its jurisdiction . . . any court in the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[14] Included in this power is the right of a court to determine whether an insurer has a duty to defend an underlying action—and if there is no duty to defend, there can be no duty to indemnify.[15]

---

[10] *Liberty Lobby*, 477 U.S. at 252 (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).
[11] *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).
[12] Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur, Inc.*, 909 F.3d 604, 613–14 (3d Cir. 2018).
[13] Fed. R. Civ. P. 56(c)(3).
[14] 28 U.S.C. § 2201(a).
[15] *ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 666 F.2d 819, 823 (3d Cir. 1981); *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 250 (3d Cir. 2019).

Under Pennsylvania law, "[a] court's first step in a declaratory judgment action concerning insurance coverage is to determine the scope of the policy's coverage."[16] In doing so, this Court faces a question of law—the interpretation of an insurance contract—and must endeavor "to ascertain the intent of the parties as manifested by the language of the written instrument."[17] I must read the policy as a whole and construe the contract "in accordance with the plain meaning of the terms."[18] If the language of a policy is clear and unambiguous, I must enforce that language; ambiguous language, however, must be construed against the insurer and in favor of the insured.[19]

"After determining the scope of coverage, the court must examine the complaint in the underlying action to ascertain if it triggers coverage."[20] "It is well established that an insurer's duties under an insurance policy are triggered by the language of the complaint against the insured."[21] Under this approach, the "question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint."[22] This principle, known as the four-corners rule, holds that "[a]n insurer

---

[16] *General Accident Ins. Co. of Am. v. Allen*, 547 Pa. 693 (1997).
[17] *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011).
[18] *Id.*
[19] *Id.* at 321.
[20] *Allen*, 547 Pa. at 706.
[21] *Kvaerner Metals Div. of Kvaerner U.S., Inc.*, 908 A.2d 888, 896 (Pa. 2006).
[22] *Lupu v. Loan City, LLC*, 903 F.3d 382, 389 (3d Cir. 2018) (internal quotation marks omitted) (quoting *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010)).

is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy."[23] Pennsylvania provides for no exception to this rule.[24]

## II. FACTS

The on-the-ground facts are simple: Rankin and Rosebrooks were driving donuts from Shippensburg, Pennsylvania to Lakeland, Florida, when at 3:58 a.m. on May 3, 2018, with Rosebrooks in the sleeper, they crashed into a guard rail and overturned, allegedly because of Rankin's negligent driving.[25]

The business and employment structures that underlie the movement of goods across our roadways, however, trend wonky. And this case is no exception. When Rankin, working for either Mid State Logistics or Rosebrooks—the fact remains in dispute—careened into the guardrail, he was driving a vehicle owned by Rosebrooks, which Rosebrooks in turn leased to Mid State Logistics.[26] Under their agreement, Rosebrooks was "responsible for providing his own workers compensation insurance, employment and income taxes, etc.," and he also assumed "complete responsibility" for any of his own drivers or employees.[27] While for its

---

[23]  *Jerry's Sport Ctr.*, 2 A.3d at 541 (citations omitted).
[24]  *Lupu*, 903 F.3d at 391 (quoting *Burchick Constr. Co., Inc. v. Harleysville Preferred Ins. Co.*, 2014 WL 10965436, at *8 (Pa. Super. 2014)) ("Pennsylvania courts have identified no exception to the time-honored rule"); *Kiely on Behalf of Feinstein v. Phila. Contributionship Ins. Co.*, 206 A.3d 1140, 1146 (Pa. Super. 2019) ("We do not consider extrinsic evidence." (citations omitted)).
[25]  Doc. 12-6 at 6–7 (Third Amended Complaint).
[26]  Doc. 6-1 ¶¶ 6, 12; Doc. 12-4 ¶¶ 6, 12.
[27]  Doc. 6-1 ¶ 8; Doc. 12-4 ¶ 8; *see also* Doc. 1-1 at 17.

part, Mid State Logistics acknowledged that it had "a legal obligation and responsibility to maintain liability and cargo insurance coverage for the protection of the public as required by Federal Highway Administration regulations."[28]

At the time of the accident, Mid State Logistics met this obligation through a United Financial Casualty-issued Progressive Commercial Auto Policy.[29] The policy broadly provides that "if [Mid State Logistics] pay[s] the premium for liability coverage for the insured auto involved, [United Financial Casualty] will pay damages, other than punitive or exemplary damages, for bodily injury, property damage, and covered pollution cost or expense . . . . [and] will settle or defend, at [United Financial Casualty's] option, any claim or lawsuit for damages covered by this Part I."[30]

But United Financial Casualty's coverage obligations are cabined by exclusions, a few of which are relevant here. First, the agreement's Auto Form provides that coverage—and therefore the duty to defend—does not extend to "Bodily injury to . . . [a]n employee of any insured arising out of or within the course

---

[28] Doc. 6-1 ¶ 7; Doc. 12-4 ¶ 7; *see also* Doc. 1-1 at 17.
[29] Doc. 6-1 ¶ 16; Doc. 12-4 ¶ 16. The parties note that Clay Rosebrooks is not listed as one of the ten rated drivers under the policy. United Financial Casualty contends that the name "Clay Borne" was intended to identify Rosebrook, whose full name is Clayborne George Rosebrooks, Jr., and emphasizes that the semi-trailer involved in the accident, a 2004 Kenworth that Rosebrooks leased to Mid State Logistics, is listed on the policy declarations. Doc. 6-1 ¶¶ 18–19. While he admits that the policy identifies Rosebrooks semi-trailer, Rankin denies that "Clay Borne" refers to Rosebrooks and contends that this driver information should have been updated. Doc. 12-4 ¶¶ 18–19. This poor record keeping does not, in my mind, impact the outcome one way or the other.
[30] Doc. 6-1 ¶ 22; Doc. 12-4 ¶ 22.

of . . [t]hat employee's employment by any insured; or . . . [p]erforming duties related to the conduct of any insured's business . . . ."[31] Second, this same Form provides that United Financial Casualty need not cover "Bodily injury to . . . a fellow employee of an insured injured while within the course of their employment or while performing duties related to the conduct [Mid State Logistics'] business."[32] And finally, the agreement includes the federally mandated MCS-90 Endorsement, which provides that the "insurance as is afforded for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment . . . ."[33]

### III. ANALYSIS

Despite the expansive coverage carve-outs for harm caused to employees—as opposed to members of the broader driving public—the policy does not, as I noted at the outset, define the term.[34] Still, this undefined term creates no controversy in one respect: the parties agree that a Federal Motor Carrier Safety Administration regulation controls the agreement.[35] The disagreement is instead about whether Rosebrooks meets the section's strictures.

Tile 49 C.F.R. § 390.5's defines "employee" across three sentences. It begins broadly: "Employee means any individual, other than an employer, who is employed

---

[31] Doc. 6-1 ¶ 23; Doc. 12-4 ¶ 23.
[32] *Id.*
[33] Doc. 6-1 ¶¶ 28–29; Doc. 12-4 ¶¶ 28–29.
[34] Doc. 6-1 ¶ 25; Doc. 12-4 ¶ 25,
[35] *See* Doc. 7 at 7–8; Doc. 12-5 at 9–10; Doc. 14 at 2.

by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety." The second and third sentence then provide context. One notes inclusions: "Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle), a mechanic, and a freight handler." The other provides exclusions: "Such term does not include an employee of the United States, any State, any political subdivision of a State, or any agency established under a compact between States and approved by the Congress of the United States who is acting within the course of such employment."

In arguing that Rosebrooks was not an employee under the regulation, Rankin emphasizes the second sentence. He contends that the Complaint alleges that Rosebrooks was an independent contractor and that he was not "in the course of operating" the semi-trailer, as he was asleep in the cabin when the accident occurred.[36] So based his construction of the regulation—where an independent contractor is only considered an employee when they are operating a commercial motor—the policy's employee exclusion does not apply.[37]

United Financial Casualty, however, contends that this approach is myopic, overemphasizing—or outright misinterpreting—the negative implications of the examples provided in the second sentence, while giving no weight to the words

---

[36] Doc. 12-5 at 9–15; *see* Doc. 12-6 at 7.
[37] *Id.* at 9.

provided in the first. In its view, Rosebrooks is either an employee because he was employed by Mid State Logistics and directly affected commercial motor vehicle safety (thus satisfying the requirements set out in the first sentence). Or he is an employee because he was operating the semi-trailer as a sleeping member of a team-driving duo (thus satisfying the requirements of the second sentence under a more cabined approach).[38]

The parties' arguments are nothing new. While this interpretative issue has not yet been addressed in this District, or in this Circuit, a host of other courts have tackled it. Some have sided with Rankin.[39] But still more have favored United Financial Casualty's approach.[40] And so does this Court.

---

[38] Doc. 7 at 16–17.

[39] *Pouliot v. Paul Arpin Van Lines, Inc.*, 292 F. Supp. 2d 374, 376–79, 385 (D. Conn. 2003) (finding that an independent contractor, who was injured while unloading truck, was not operating a motor vehicle and therefore was not an employee under § 390.5); *Walker v. Transportation Int'l Movers, Inc.*, 2007 WL 4180698, at *1–2, *4 (D. Or. Nov. 21, 2007), *adopting report and recommendation*, (citing *Pouliot*, 292 F. Supp. 2d at 377–83) (finding that an independent contractor, who was alleged to have punched another driver during an argument outsider a customer's house, was not operating a vehicle and therefore was not an employee under § 390.5); *Great W. Cas. Co. v. Nat'l Cas. Co.*, 53 F. Supp. 3d 1154, 1181–82 (D. N.D. 2014) (Miller, M.J) (finding that, while the case was determined on state law grounds, an independent contractor, who was standing by while his trailer was being repaired, was not operating a vehicle and therefore was not as an employee under § 390.5), *aff'd on other grounds*, 807 F.3d 952 (8th Cir. 2015).

[40] *Ooida Risk Retention Group, Inc. v. Williams*, 579 F.3d 469, 471, 474–76 (2009) (finding that both members of a driving team, despite one also qualifying as an employer, were employees under § 390.5); *Consumers Cnty. Mut. Ins. Co. v. P.W. & Sons Trucking, Inc.*, 307 F.3d 362, 363–64, 367, 367 n.8 (5th Cir. 2002) (finding that an independent contractor member of a driving team, who was injured while off-duty in the sleeper, was an employee under § 390.5); *White v. Excalibur Ins. Co.*, 599 F.2d 50, 53 (5th Cir. 1979) (finding that both members of a driving team, whether resting or at the wheel, are statutory employees during the drive); *Canal Ins. Co. v. Moore Freight Servs., Inc.*, 2015 WL 3756840, at *4 (E.D. Tenn. June 16, 2015) (finding that an independent contractor, who died of heart failure while inspecting smoking brakes on the side of the highway, was operating a commercial vehicle under § 390.5); *Progressive Mountain Ins. Co. v. Madd Transp., LLC*, 2015 WL 1419486, at *1, *6 (S.D. Ga.

The decisions that Rankin marshals in support of his position can be traced to *Pouliot v. Paul Arpin Van Lines*.[41] There, the court considered a claim involving an independent contractor who was rendered a paraplegic when a device fell on him while he was unloading a truck.[42] Whether he could recover damages through his suit or would instead be limited to recover under Rhode Island's worker compensation scheme hinged on his status under § 390.5.[43] In finding that he did not qualify as an employee, the court reasoned that independent contractors are employees only when operating a commercial motor vehicle.[44] The court appears to reach this result by applying negative-implication canon to the regulation's second sentence, which provides that the term "includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a

---

    Mar. 27, 2015) (finding that an independent contractor, who was injured at a loading station when metal pipes fell from the trailer and struck him, was an employee under § 390.5 because he "was working as a truck driver . . . at the time of the incident"); *Lancer Ins. Co. v. Newman Specialized Carrier*, 903 F. Supp. 2d 1272, 1274, 1280–81(N.D. Ala. 2012) (declining to follow *Pouliot*, 292 F. Supp. 2d 374, and finding that an independent contractor, who was injured while unloading cargo from his tractor trailer, was an employee under § 390.5 because he was "hired as a driver of a commercial vehicle"); *United Fin. Cas. Co. v. Abe Hershberger & Sons Trucking LTD*, 2012 WL 457715, at *1, *5–6 (Ohio Ct. App. Feb. 14, 2012) (declining to follow *Pouliot*, 292 F. Supp. 2d 374, because § 390.5's plain language does not limit "an independent contractor's status as a statutory employee to times when the individual is actually operating a commercial motor vehicle" and finding that an independent contractor, who was injured as a passenger in an accident while training a new driver, was an employee under the regulation); *Basha v. Ghalib*, 2008 WL 3199464, at *1 (Ohio Ct. App. Aug. 7, 2008) (finding that an independent contractor team driving member, who was injured in an accident while he was in the passenger seat, was an employee under § 390.5).

[41]  292 F. Supp. 2d 374.
[42]  *Id.* at 376.
[43]  *Id.* at 378–79.
[44]  *Id.*

commercial motor vehicle) . . . ."[45] In short, the parenthetical inclusion implies the exclusion of all other things independent contractor.[46] I respectfully disagree.

Like many other courts, I find it difficult to square *Pouliot*'s bifurcating reading with one of the statute's primary purposes: eliminating the distinction between independent contractors and employees to ensure that injured members of the public are not left without a recovery because of chicanerous corporate structuring.[47] But that alone is not a sin.

As I see it, the *Pouliot* approach fails because it misinterprets the word "include"—as in, "Such term *includes* a driver of a commercial motor vehicle (*including* an independent contractor while in the course of operating a commercial

---

[45] *Id.* (citing 49 C.F.R. § 390.5); *see* A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 107–11 (2012) (Scalia & Garner) (describing the negative-implication canon). I say *appears* to apply because the Court does not state that it is using of the canon outright. Still, the language of the decision and the outcome of its interpretation leave little doubt. *See* Scalia & Garner 107 ("The critical portion of § 390.5 reads as follows: 'Employee . . . includes a driver of a commercial motor vehicle (including an *independent contractor while in the course of operating a commercial motor vehicle*)'. . . . This sentence reveals critical information about how this regulation should be interpreted. . . . The language of the regulation is clear—the 'independent contractor' is treated as an 'employee' under this section when certain conditions are satisfied. Specifically, independent contractors are deemed 'employees' while in the course of operating a commercial motor vehicle.").

[46] *See* Scalia & Garner 107 ("Virtually all the authorities who discuss the negative-implication canon emphasize that it must be applied with great caution, since its application depends so much on context. Indeed, one commentator suggests that it is not a proper canon at all but merely a description of the resulted gleaned from context. That goes too far. Context establishes the conditions for applying the canon, but where those conditions exist, the principle that specification of the one implies the exclusion of the other validly describes how people express themselves and understand verbal expression.").

[47] *Abe Hershberger & Sons*, 2012 WL 457715, at *4 (quoting *P.W. & Sons*, 307 F.3d at 366) (citing *Perry v. Harco Nat'l Ins. Co.*, 129 F.3d 1072, 1075 (9th Cir. 1997)) ("Several federal courts have held that [§] 390.5 eliminated the common law distinction between employees and independent contractors 'to discourage motor carriers from using the independent contractor relationship to avoid liability exposure at the expense of the public.'").

motor vehicle) . . . ."[48] The *Pouliot* court treated the term as exhaustive, not exemplary.[49] And this is an error; "the word *include* does not ordinarily introduce an exhaustive list," that task is instead left to words like "'consists of' or 'comprises.'"[50] So the negative-implication canon—which is appropriate "only when . . . the thing specified . . . can reasonably be thought to be an expression of *all* that shares in the grant"—is inapplicable because "includes" is, presumptively, not an expression of *all*.[51] Thus, under the plain meaning of the second sentence, we can say, affirmatively, that an independent contractor operating a commercial motor vehicle is an employee, but nothing more.

Now, some courts have found that a person need not be driving to be operating the semi-trailer.[52] But under my reading of the regulation, this is not a question that

---

[48] 49 C.F.R. § 390.5 (emphasis added). I'll also note that I find it an odd fit to read a negative implication into a sentence of inclusions when the next sentence acts to exclude. *See id.* ("Such term does not include an employee of the United States, any State, any political subdivision of a State, or any agency established under a compact between States and approved by the Congress of the United States who is acting within the course of such employment.").

[49] *Pouliot*, 292 F. Supp. 2d at 378–79.

[50] Scalia & Garner 107.

[51] *Id.* at 132; *see, e.g., Fed. Land Bank of St. Paul. v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) ("the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle").

[52] While in *Pouliot* the court reasoned that operating was synonymous with driving, neither that case nor its progeny considered team-driver accidents. *See Pouliot*, 292 F. Supp. 2d at 374; *Walker*, 2007 WL 4180698, at *1–2; *Great West Cas. Co.*, 53 F. Supp. 3d at 1181–82. And based on the parties' submissions, it appears that courts that have considered this fact pattern have unanimously found that independent contractors riding along in the passenger seat or in the sleeper are operating the motor vehicle. *Ooida Risk Retention Group, Inc.* 579 F.3d at 471, 474–76; *P.W. & Sons Trucking, Inc.*, 307 F.3d at 363–64, 367, 367 n.8; *White*, 599 F.2d at 53; *Abe Hershberger & Sons Trucking LTD*, 2012 WL 457715, at *1, *5–6; *Basha*, 2008 WL 3199464, at *1. So even if this Court adopted a more restrained reading, it would still find that Rosebrooks qualified as an "employee" under § 390.5. *See White*, 599 F.2d at 53 ("The

must be answered. Rosebrooks' employee status is settled by the qualifications posited in § 390.5's first sentence: Do his pleadings show that he was employed by an employer? And do they further show that he directly affected commercial motor vehicle safety in the course of his employment?[53]

The answer to both questions here is yes. Rosebrooks' pleadings show that he was employed by Mid State Logistics and was injured while serving as one-half of the driving team—a role that inarguably impacts commercial motor vehicle safety.[54] As a result, Rosebrooks is an employee under 49 C.F.R. § 390.5. United Financial Casualty Company therefore has no duty to defend or indemnify Rankin or Mid State Logistics under the commercial auto policy. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

distinction sought to be drawn between a driver on duty and operating the vehicle and a driver on duty and sitting on the right hand seat or asleep in the rest compartment is specious. Wright was not in a position comparable to being 'at home asleep in his own bed.' He was part of the two-man team actually engaged in operating the vehicle on Superior's business. The team is indispensable to continual vehicle operation for federal law generally permits each driver to work only ten hours at a time and then to obtain at least eight hours of rest. . . . The activities of each of the pair during a single driving stint, including his rest period, are clearly within the course of his employment.").

[53] *See* 49 C.F.R. § 390.5 ("Employee means any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety."); *Jerry's Sport Ctr.*, 2 A.3d at 541 ("An insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy.").

[54] Doc. 12-6 at 6 ("10. At the above stated time and place, Plaintiff, Clay Rosebrooks, was a passenger in the 2004 Kenworth tractor-trailer truck in his capacity as an off-duty, independent contractor of the Defendant, Mid-States [sic] Logistics, LLC.").